# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | | |
|---|---|---|
| | ) | |
| UNITED STATES OF AMERICA | ) | DOCKET NO. 3:24-cr-145 |
| | ) | |
| | ) | GOVERNMNET RESPONSE TO |
| VS. | ) | DEFENDANT'S MOTION TO SUPPRESS |
| | ) | EVIDENCE, REQUEST FOR FRANKS |
| | ) | HEARING, AND FOR RELIEF FROM |
| TYRRELL CHERRY | ) | PRETRIAL MOTION DEADLINE |
| | ) | |

The defendant demands suppression of evidence based on his misunderstanding of the facts surrounding the authorized search of a mail parcel. The search was lawfully conducted pursuant to a federal search warrant. As such, no Fourth Amendment violation occurred. This Court should deny the defendant's motion.

The defendant's motion also makes a flurry of other assertions, some of which have no bearing on his motion to suppress, including that (1) he suffered from ineffective assistance of counsel, (2) the Court violated his rights to Due Process, (3) the Government obstructed his access to discovery, (4) the Government committed procedural rules violations, and (5) there is some cause to suppress evidence from "the iPhone warrant." His claims are either incognizable and/or incomplete. Regardless, none warrant relief. The United States responds below to the degree possible.

## I.  BACKGROUND

### a.  Investigation into the Defendant's Drug Operation

In the spring of 2024, the United States Postal Inspection Service (hereinafter "USPIS") and the Internal Revenue Service's Criminal Investigation unit (hereinafter "IRS-CI") initiated an investigation into the defendant for drug trafficking and money laundering. The investigation

developed after Postal Inspectors identified a suspicious package that was shipped through the mail from Bayamon, Puerto Rico to Charlotte, North Carolina. The suspicious package was a United States Postal Service (hereinafter "USPS") Priority Mail parcel bearing tracking number 9505 5106 9011 4064 4568 27 (hereinafter "Parcel 6827".)

On March 8, 2024, investigators searched Parcel 6827 pursuant to a federal search warrant. The package contained approximately one kilogram of cocaine. Because the package was destined for the defendant's residence, after seizing the package, law enforcement endeavored upon a fulsome investigation into the defendant. Quickly, law enforcement identified the defendant as a high-volume drug dealer operating within the Charlotte area.

Prior to and throughout the investigation, the defendant used USPS to receive parcels containing cocaine from Puerto Rico. The defendant also mailed several packages to Puerto Rico. Investigators searched one such package, pursuant to a warrant, and found it contained over $50,000 in cash.

Throughout the investigation, the defendant sold user quantities of cocaine to customers in and around Charlotte, including an undercover officer. The defendant charged the undercover officer $80 per gram of cocaine. Though the undercover officer paid in cash, investigators learned that the defendant often used internet-based peer-to-peer money transfer applications (such as Venmo) to collect payment from his customers.

Law enforcement collected records associated with the defendant's peer-to-peer money transfer accounts. The records show that millions of dollars flowed through the defendant's Venmo account alone. Much of the account activity were in small dollar deposits – most deposits in amounts divisible by 80 (i.e. $80, $160, $240, etc.) – from hundreds of different individuals.

IRS-CI also connected several large dollar monetary transactions – including real property purchases – to the defendant. Financial records show that the money the defendant amassed in Venmo and through other sources was used to fund those transactions.

b. Information Pertaining to the Search of Parcel 6827

On March 4, 2024, Parcel 6827 entered the mail stream in Bayamon, Puerto Rico. Parcel 6827 was addressed to "Tylesha Cherry, 1009 Justice Ave, Charlotte, NC, 28206." (Enclosure 1 at ¶ 6.)

On March 5, 2024, the USPIS identified Parcel 6827 as suspicious given the parcel's weight, excessive taping, and labeling information. (Enclosure 1 at ¶ 7.)

Accordingly, on March 6, 2024, when Parcel 6827 arrived to the USPS Charlotte Regional Processing and Distribution Center in Gastonia, North Carolina, investigators used a drug detection dog to "sniff" the package. The drug detection dog alerted to the presence of narcotics emanating from Parcel 6827. Next, Postal Inspector Justin Jenkins drafted and submitted an application for a search warrant to United States Magistrate Judge Susan Rodriguez.[1] (Enclosure 1 at ¶ 13-15.)

On March 7, 2024, Judge Rodriguez authorized the search of Parcel 6827. (Enclosure 2.)

On March 8, 2024, Postal Inspector Jenkins, along with Postal Inspector Kenny Maher, opened Parcel 6827, revealing that it contained over one kilogram of cocaine. (Enclosure 3 at ¶ 4.) Postal Inspectors Jenkins and Maher documented their search by taking photos with a digital camera. (Enclosure 4.) One of the photographs from March 8, 2024, shown below, depicts Parcel

---

[1] On March 7, 2024, Judge Rodriguez sat in the Western District of North Carolina as a Magistrate judge. She has since been appointed to the Distrct Court, where she now sits.

6827 unopened.[2]  Metadata associated with the photograph shows pertinent information about when and how the photograph was taken.  Specifically, the metadata demonstrates the photograph was captured on March 8, 2024 at 8:32 a.m.  (*See* Enclosure 5.)



The inspectors next placed the evidence collected during the search, including the kilogram of cocaine, into evidence bags, which they labeled, as depicted below.  (Enclosure 4.)  Those evidence bags were labeled with the date of the search: "3/8/2024."



---

[2] The defendant was provided the photograph at BS USA_00000002, and several others, in discovery.  The photograph was provided in its native format, including the metadata.

Concurrent to the search, Postal Inspector Jenkins and Postal Inspector Maher completed a "Parcel Warrant Notes" form. (Enclosure 6.) On that form, the agents documented every step of the search in painstaking detail. One such detail being the date and time of the search: March 8, 2024 from 8:31 a.m. to 9:05 a.m.

Postal Inspector Jenkins further documented the search in a subsequent formal report. (Enclosure 3.) In that report, Postal Inspector Jenkins clearly lays out the timeline of events leading up to the March 8, 2024 search of Parcel 6827, consistent with the above.

Long after the search, on June 14, 2024, an analyst at USPIS drafted a report documenting a series of several of packages similar to Parcel 6827 which were connected to the defendant. (Doc. No. 51-2 at page 2.) The report documented a long history of the defendant's use of the U.S. Mail System to transport his drug supply from the Caribbean to Charlotte. In the report the analyst summarized the steps taken prior to his reporting. He wrote, "[o]n March 6, 2024, approximately one kilogram of suspected cocaine was seized from the contents of United States Postal Service (USPS) Express parcel 9505510690114064456827 (herein, seized parcel). Reference all previous reports under this case 4268586-PMN." (Doc. No. 51-2 at page 2 at ⁋ 1.) 4268586-PMN is the case number Postal Inspector Jenkins used to document his investigation into the defendant.

c. Information Pertaining to Search of the Defendant's iPhone

On June 24, 2025, USPIS, IRS-CI, and the Charlotte-Mecklenburg Police Department executed a series of search warrants and an arrest warrant related to the case. In so doing, law enforcement, acting pursuant to a federal search warrant, seized the defendant's iPhone. (Enclosure 8.) Investigators extracted and searched the device in accordance with the warrant.

d. <u>Procedural History</u>

On June 17, 2025, the Grand Jury sitting in the Western District of North Carolina indicted the Defendant on twenty-three separate criminal counts, including for Conspiring to Distribute and Possessing with the Intent to Distribute Cocaine, Attempting to Possess with the Intent to Distribute Cocaine, Distributing Cocaine on multiple occasions, and Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity. (Doc. No. 3.)

On December 10, 2025, the Grand Jury sitting in the Western District of North Carolina returned a superseding bill of indictment adding an additional count against the defendant. That being a count of Possession with the Intent to Distribute Cocaine. (Doc. No. 35.) The defendant was subsequently arraigned on the superseding bill of indictment.

Between June 2025 and April 2026, the United States has remitted thousands of pages of discovery to the defendant through his counsel. The undersigned has met with, spoken to, and otherwise corresponded with the defendant and/or his representatives on a number of occasions regarding requests for discovery. For example: (1) on March 6, 2026, in response to a demand for discovery by the defendant, the United States sent the defendant a response, (2) on April 1, 2026, the undersigned met with the defendant and his standby counsel over video teleconference to discuss discovery, and (3) on April 15, 2026, the undersigned responded via email to additional discovery queries by the defendant.

On April 15, 2026, the defendant filed a Motion to Suppress Evidence, Requesting a *Franks* Hearing, and for Relief from Pretrial Motion Deadlines.[3] (Doc. No. 51.) Therein the defendant

---

[3] Of note, the defendant failed to adhere to this Court's standing order regarding the use of artificial intelligence (3:24-mc-104). It appears, from the Government's review of the defendant's filing and other material, that the defendant used AI to research and draft the filings which are the subject of this motion.

requests this Court, (1) consider the motion regardless of timeliness, (2) schedule an evidentiary hearing related to the instant matter, (3) suppress evidence related to Parcel 6827, (4) suppress evidence related to "the iPhone warrant," and (5) grant such other further relief as the Court deems just and proper.

The United States hereby responds in opposition to the defendant's filing.[4]

## II.      ANALYSIS

Primarily, the defendant complains that a search of Parcel 6827 was conducted a day before the issuance of a federal search warrant, constituting an illegal search.  The defendant is wrong. Additionally, the defendant (1) suggests, without elaborating, that a search of his iPhone should also be suppressed, (2) claims procedural violations occurred in his case, and (3) alleges the Government obstructed his access to discovery.  These claims likewise merit no relief. Accordingly, the defendant's motion should be denied in its entirety.

a.   Postal Inspector Jenkins searched Parcel 6827 following court authorization.

Postal Inspector Jenkins searched Parcel 6827 in accordance with, and following the issuance of, a valid warrant.  The defendant's claim otherwise turns on the facts, not the law.  The premise of his argument is that USPIS searched Parcel 6827 before Judge Rodriguez's authorization.  As is clear from the glut of evidence catalogued above, that is not what happened. Judge Rodriguez signed the warrant on March 7, 2024.  Postal Inspector Jenkins searched Parcel 6827 on March 8, 2024.  The search was lawfully and appropriately conducted.  Accordingly, this Court should deny the defendant's motion.

---

[4] The United States takes no position as to the timeliness of the defendant's filing nor the request for an evidentiary hearing.  Similarly, the United States does not analyze the defendant's claims of ineffective assistance of counsel or due process violations, as the defendant does not appear to seek relief for those perceived issues.

The record is replete with evidence that demonstrates Postal Inspector Jenkins searched Parcel 6827 on March 8, 2024. That evidence includes the Inspector's contemporaneous notes of the search, the photos of the search, the underlying metadata related to the photos of the search, and Inspector Jenkins's official report pertaining to the search. All the evidence points to the same painfully obvious conclusion: law enforcement searched Parcel 6827 on March 8, 2024.

The defendant ignores all of the logical evidence collected from the parties that conducted the search and instead misinterprets a single sentence in an analyst's report that – to the defendant's mind – suggests law enforcement conducted the search on March 6, 2024. The analyst's report (Doc. No. 51-2 at page 2) is twelve pages focusing on the defendant's use of the U.S. Mail System to facilitate his drug distribution enterprise. In the first paragraph, the analyst summarizes the steps taken by others in the investigation. In so doing, he notes March 6, 2024 as the date of the seizure. This is, of course, the date Parcel 6827 was taken out of the mail stream, not the date the package was searched. It's clear that the analyst's statement is not intended to be documentation of the search, but rather a conflated summary of what happened preceding his lengthy analysis. A single sentence from the analyst's report is not evidence of a premature search of Parcel 6827. Instead, the totality of the true evidence of the search proves one thing: Postal Inspector Jenkins searched Parcel 6827 following the issuance of a search warrant. Accordingly, defendant's suppression argument is moot.

Because there is overwhelming documentary evidence to demonstrate that the search was conducted on March 8, 2024, there is little need for a hearing on the matter. However, should this Court wish to have a hearing, the United States is prepared to call Postal Inspector Jenkins to testify about the timing of the search.

b.  <u>The government searched the defendant's iPhone following court authorization and no legal deficiency exists which would warrant suppression.</u>

The defendant seeks suppression of "all evidence derived from the iPhone warrant." (Doc. 51 at page 3.)  The defendant fails, however, to articulate any fact or law that would warrant such suppression.

The investigation involved a search of the defendant's iPhone, pursuant to a lawfully issued warrant.  There exists no legal defect related to the subsequent search.  Accordingly, this Court should deny the defendant's request for suppression related to "evidence derived from the iPhone warrant."

c.  <u>No procedural violations occurred warranting relief.</u>

The defendant seems to claim that perceived violations of Fed. R. Crim. Pro. 41 support suppression of evidence in this case.  Though it is difficult to discern the basis of the defendant's argument, it is of no cause.  Even if some violation of Rule 41 occurred, it is settled law in the Fourth Circuit where ministerial violations of Rule 41(d) occur suppression is not an appropriate remedy.  *United States v. Smith*, 914 F.2d 565, 568 (4th Cir. 1990), citing *United States v. Wyder*, 674 F.2d 224, 226 (4th Cir.).  That long held conclusion was recently reaffirmed by the Court in *United States v. Twitty*.  *See* No. 23-4234, 2025 WL 2049059, at *15 (4th Cir. July 22, 2025.)

Because the defendant has no cause of action even if violations occurred, no suppression is warranted.

9

     d.  <u>The United States has gone to great lengths to ensure the defendant has access to his discovery</u>.

The defendant falsely alleges that the government obstructed his access to discovery.  The United States has, on several occasions worked to ensure the defendant has access to the discovery in his case in accordance with the local rules governing disclosure.  That includes remitting discovery to each of the defendant's counsel, responding to each of the defendant's queries, and holding a discovery conference with the defendant himself.

The United States has exceeded its obligation to the defendant in remitting discovery.  His claim to the contrary is false, and warrants no relief.

**III.  CONCLUSION**

For the reasons explained above, this Court deny the defendant's motion in its entirety.

Respectfully submitted April 22, 2026.

 

                    **RUSS FERGUSON**
                    **UNITED STATES ATTORNEY**

                    Assistant United States Attorney
                    California State Bar No.: 339592
                    227 West Trade Street, Suite 1650
                    Charlotte, North Carolina 28202
                    Telephone: (704) 342-6253
                    Email: brian.kenney@usdoj.gov

                    */s/ Eric A. Frick*
                    Special Assistant United States Attorney
                    North Carolina Bar Number: 49212
                    227 West Trade Street, Suite 1650
                    Charlotte, North Carolina 28202
                    Telephone: (704) 342-6253
                    Email: eric.frick@usdoj.gov

## <u>CERTIFICATION</u>

Pursuant to the Standing Order of this Court entered June 18, 2024, and published to the Bar of the Western District on June 27, 2024, the undersigned hereby certifies:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the April 22, 2026.

*/s/ Brian Kenney*
Assistant United States Attorney
